**Richard RUNYAN, Plaintiff,**

v.

**NCR CORPORATION, Defendant.**

No. C–3–80–202.

United States District Court,
S.D. Ohio, W.D.

Oct. 31, 1983.

Paul H. Tobias, Cincinnati, Ohio, for plaintiff.

Gordon H. Savage, Dayton, Ohio, for defendant.

DECISION AND ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; JUDGMENT TO BE ENTERED FOR DEFENDANT; TERMINATION ENTRY

RICE, District Judge.

This matter is before the Court for a determination of Defendant NCR Corporation's (NCR) Motion for Summary Judgment (doc. #12). The present suit was filed pursuant to 28 U.S.C. § 1343[1] and 29

---

1. 28 U.S.C. § 1343 provides in relevant part:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\*    \*    \*    \*    \*    \*

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

U.S.C. § 626(c) [2], the civil enforcement provision of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. Plaintiff alleges that, prior to filing the instant action, he complied with the prerequisite required by 29 U.S.C. § 626(d) [3] of filing a charge of age discrimination with the Secretary of Labor [4] within 180 days of the alleged discriminatory conduct of the Defendant.

## I. UNDISPUTED FACTS

The pleadings, affidavits and depositions filed in this matter reveal the following to be the undisputed facts relevant to a determination of Defendant's Motion for Summary Judgment:

A. Plaintiff, Richard Runyan, was born December 5, 1918, and, at age 53, was hired by James E. Rambo, Vice President and General Counsel at NCR, to work as an Assistant General Counsel in NCR's Corporate Legal Department. (Runyan Deposition, pp. 4, 12, 21).

B. On or about the end of January or the beginning of February, 1977, Mr. Rambo informed Mr. Runyan that his employment with NCR would be terminated at the end of three months. (Runyan Deposition pp. 66–67; Rambo Deposition, pp. 3 & 4) At that meeting, Mr. Runyan informed Mr. Rambo that he felt his "termination was related to age discrimination." (Runyan affidavit, Doc. # 17, ¶ 9.)

C. Subsequent meetings took place between Mr. Runyan and Mr. Rambo, in which the terms under which Mr. Runyan would terminate his employment with NCR were further discussed. (Runyan Deposition, pp. 67–71; Rambo Deposition, pp. 13–14)

D. As an outgrowth of these discussions, Mr. Runyan entered into a written Consulting Agreement with NCR which became effective on June 1, 1977, and was to terminate on May 31, 1978. The Agreement provided that, during the period designated therein, Mr. Runyan was to provide legal services on a consultant basis for which he was to be compensated at a rate of $150 per day, but subject to a minimum amount of compensation of $2,333 per month plus reimbursement for work related expenses. (Runyan Deposition, Defendant's Exhibit G, Consulting Agreement.)

E. In November of 1977, Mr. Runyan requested that the length of his Consulting Agreement be extended and that he be given increased compensation pursuant to the Agreement. (Runyan Affidavit, Doc. # 17, ¶ 6)

F. At a subsequent meeting in November of 1977, Mr. Rambo informed Mr. Runyan that the term of his Agreement would not be extended but that his compensation would be increased to $4,000 per month from November 1, 1977, through May 31, 1978, in consideration for Mr. Runyan's

---

**2.** 29 U.S.C. § 626(c) provides in relevant part:

(1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* That the right of any person to bring such action shall terminate upon the commencement of an action by the Commission to enforce the right of such employee under this chapter.

**3.** 29 U.S.C. § 626(d) provides:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Commission. Such a charge shall be filed—
(1) within 180 days after the alleged unlawful practice occurred; or
(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged

unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

**4.** Since the filing of this action, the administrative and enforcement functions relevant to this proceeding have been transferred from the Secretary of Labor to the Equal Employment Opportunity Commission pursuant to Section 1 of the 1978 Reorganization Plan No. 1, 43 F.R. 19087, 92 Stat. 3781. Thus, a charge of age discrimination in employment would now be filed with the EEOC.

executing a release of all claims he had or may have against NCR relating to his employment and/or his termination from employment. (Runyan Deposition, p. 81; Runyan Affidavit, Doc. # 17, ¶ 6)

G. On November 25, 1977, Mr. Rambo and Mr. Runyan entered into a written amendment to the June 1, 1977, Consulting Agreement which provided that Mr. Runyan would receive $4,000 per month from November 1, 1977, to May 31, 1978. (Runyan Deposition, Defendant's Exhibit H)

H. Also on November 25, 1977, Mr. Runyan signed an "Accord and Satisfaction, Release, and Discharge" which provided that

> In consideration of the 'Amendment to the Consulting Agreement' executed by NCR ... I, Richard V. Runyan, hereby release and forever discharge NCR, its successors, assigns, transferees, officers, employees, representatives and agents from all manner of action and actions, cause and causes of action, suits, debts, contracts, controversies, agreements, promises, damages, judgments, awards, executions, claims and demands whatsoever in law or in equity, which against NCR, I, Richard V. Runyan, ever had, now have, or which I hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents, save and except the aforementioned 'Amendment to Consulting Agreement' of November 25, 1977, and the underlying 'Consulting Agreement of June 1, 1977'.
>
> I have read this release and understand all of its terms. I execute it voluntarily and with full knowledge of its significance. (Runyan Deposition, Defendant's Exhibit H)

I. On May 31, 1978, the terms of the Consulting Agreement, as amended, expired and Mr. Runyan's working relationship with NCR terminated. (Runyan Affidavit, Doc. # 17, ¶ 10)

J. On November 27, 1978, Mr. Runyan filed a charge of age discrimination with the Secretary of Labor concerning his termination at NCR. (Plaintiff's Complaint, ¶ 8)

K. On May 22, 1980, Plaintiff filed the instant proceeding alleging that he was terminated from NCR because of his age in violation of the provisions in the ADEA.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The basic thrust of Defendant's argument in support of its Motion for Summary Judgment is that Plaintiff is barred from bringing the present suit because he knowingly and voluntarily signed a release of all his claims against NCR, arising from his employment and/or termination of his employment with NCR, in consideration for the amendment to the Consulting Agreement which increased his compensation from $2,333 to $4,000 per month. Defendant contends that Plaintiff was an experienced labor lawyer, who had, upon learning of his termination in February of 1977, indicated NCR's action might be related to age discrimination. When presented with the option of receiving increased compensation for the remainder of his Consulting Agreement in exchange for his signing the release, Plaintiff took the proposed amendment and the release home to read prior to signing both documents. The language of the release, Defendant contends, is clear and concise. That fact, coupled with the fact that Plaintiff is an experienced labor lawyer who had previously articulated his belief that the action of NCR might involve age discrimination, Defendant argues, establishes beyond question that Plaintiff voluntarily and knowingly released his alleged age discrimination claim against NCR. Thus, Defendant contends that it is entitled to summary judgment, because there is no genuine issue of material fact as to whether Plaintiff is barred from bringing the instant action.

In opposition to Defendant's Motion for Summary Judgment, Plaintiff raises a number of arguments. First, Plaintiff contends that there is a genuine issue of material fact concerning the following issues: whether there was a bona fide dispute con-

cerning a potential age discrimination charge when the release was executed; what was the intent and knowledge of the parties when the release was executed; the adequacy of the consideration; and "all the circumstances surrounding the execution of the release." (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 11) Plaintiff also asserts that as a matter of law, the release he executed does not bar the present action because there was no express waiver of his ADEA claim. He claims that an "unsupervised waiver" of his ADEA claim which he values at $450,000, in addition to the right to reinstatement, in exchange for the mere sum of $12,000, violates public policy and is void. Further, the Plaintiff contends that ADEA claims cannot be released prospectively and as the release was signed prior to his actual termination from NCR in May, 1978, the release cannot operate as a bar to this subsequent arising cause of action.

## III. APPLICABLE LAW

In determining whether summary judgment is to be granted, the Court must first determine that there is no genuine issue of material fact. Fed.R.Civ.P. 56. "Thus on a motion for summary judgment, the movant has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979), *cert. denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *citing, Adickes v. Kress & Co.,* 398 U.S. 144, 157, 158–59, 90 S.Ct. 1598, 1608, 1608–09, 26 L.Ed.2d 142 (1970); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *United States v. Articles of Device, etc.,* 527 F.2d 1008, 1011 (6th Cir. 1976); *see Ott v. Midland Ross Corp.,* 600 F.2d 24, at 28 & n. 3. (6th Cir.1979).

■ Moreover, because this matter involves the purported release of a federal statutory claim, this Court may interpret the release without regard to state law. *City of Cleveland v. Cleveland Electric Illuminating Co.,* 538 F.Supp. 1287, 1289 (N.D.Ohio 1980); *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 889 (3d Cir.1975); *Coester v. H.H.B. Co.,* 447 F.Supp. 372 (D.S.Da.1978). The Court may, however, refer to and apply appropriate state law to the extent it is not inconsistent with federal common law. *Id.*

■ As with other claims of employment discrimination, a release of an ADEA claim knowingly and voluntarily entered into by an employee with his employer will be given effect absent vitiating circumstances surrounding its execution such as fraud, duress, lack of consideration, or mutual mistake of fact. *See, e.g., Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1973); *Pilon v. University of Minnesota,* 710 F.2d 466, 467 (8th Cir.1983); *Strozier v. General Motors Corp.,* 635 F.2d 424, 426 (5th Cir.1981); *Odomes v. Nucare, Inc.,* 653 F.2d 246, 253 (6th Cir.1981); *Ott v. Midland-Ross Corp.,* 600 F.2d 24 (6th Cir.1979); *Cox v. Allied Chemical,* 538 F.2d 1094 (5th Cir.1976); *Garvin v. Postmaster, United States Postal Service,* 553 F.Supp. 684 (E.D.Mo.1982).

The question presented in this matter focuses on whether any of the arguments raised by Plaintiff are sufficient to override the plain language of the release he executed, thus enabling Plaintiff to litigate his claim against NCR for alleged age discrimination in terminating his employment.

## IV. DISCUSSION

Plaintiff contends that because he did not mention that he might have an ADEA claim against NCR in the November, 1977, meeting that resulted in the execution of the release, there was no bona fide dispute with respect to an age discrimination claim and thus the release cannot serve as a bar to this action.

Plaintiff does not elaborate on the significance of the necessity of there being a bona fide dispute. The Court notes, however, that a finding that there was a bona fide dispute has a potential bearing on two areas of concern that arise in evaluating the effect to be given an apparent release

of a claim against an employer such as that presented herein.

The first concern is whether the release is supported by adequate consideration. *See Anderson v. Ciba Geigy Corp.*, 490 F.2d 438, 440–41 (8th Cir.1974); *Coester v. H.H.B. Co.*, 447 F.Supp. 372, 378 (D.S.Da. 1978). The second concern is whether the employee's release of his claim was knowing. *See, Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147; *Cox v. Allied Chemical Corp.*, 538 F.2d 1094; *Garvin v. Postmaster, United States Postal Service*, 553 F.Supp. 684.

Turning first to the Plaintiff's contention that there is a genuine issue of material fact concerning whether a bona fide dispute existed with respect to the reasons for terminating Plaintiff, the Court finds this argument contrary to the facts before it. In his deposition, Mr. Runyan indicated that from the beginning of his employment with NCR, he was aware that he was in the age bracket protected by the ADEA and that he believed he could thus only be terminated for cause. (Runyan Deposition, pp. 17–19). Plaintiff also stated in this deposition that he first suspected he was being discriminated against on the basis of age when he was told he would be terminated. (Runyan Depos., pp. 66–67; 78–79) Similarly, in Plaintiff's affidavit filed in opposition to Defendant's Motion for Summary Judgment, Plaintiff again admits that when he was first advised of his termination in February of 1977, it occurred to him that the termination was "related to age discrimination," and that he advised Mr. Rambo of his feelings. (Affidavit of Richard Runyan, Doc. # 17, ¶ 9; Affidavit of James E. Rambo, Doc. # 14, p. 4)

On the other hand, Mr. Rambo's affidavit states that Plaintiff's termination was prompted by Plaintiff's inadequate job performance and that he explained to Plaintiff the basis for his termination. (Rambo Affidavit, Doc. # 14, pp. 3–4). Plaintiff does not dispute that he was told his termination was related to his job performance; rather

in his deposition, he indicated that he had had no prior indication that his performance was in any way a problem and that he concluded that the termination might in fact involve age discrimination.[5] (Runyan Depos., pp. 65–69).

The evidence before the Court thus establishes that from the outset Plaintiff felt and made known to Defendant that he suspected his termination involved age discrimination. Similarly, Mr. Rambo felt and made known to Plaintiff that it was Plaintiff's job performance that prompted his termination. There is nothing in the record that indicates that Plaintiff's and Defendant's dispute over the reasons for Plaintiff's termination was not bona fide or that their differences were subsequently resolved. That Plaintiff did not reiterate his suspicions at the November meeting when the release was executed, does not alter the conclusion that from the outset the parties did not agree on the true reasons behind Plaintiff's termination. The Court concludes, therefore, that there is no genuine issue of material fact as to the presence of bona fide dispute concerning Plaintiff's termination. Such a dispute, in fact, existed between the parties at the time.

Having determined that a bona fide dispute in fact existed between the parties, it follows that the release of Plaintiff's potential claims was supported by consideration.

When Plaintiff executed the release in exchange for the receipt of approximately $12,000 more than what he was entitled to receive under the original Consulting Agreement, Plaintiff received money to which he was not previously entitled and, ostensibly, in lieu of receiving the additional compensation relinquished his right to pursue a legal remedy for what he felt to be his wrongful termination. Thus consideration flowed to both parties to the release.

Plaintiff, however, makes two arguments with respect to the consideration he received in return for executing the release,

---

5. Plaintiff also discussed in his disposition his belief that his termination might also involve reverse race discrimination. Because the Plaintiff does not raise such an allegation in his complaint, the Court focuses its attention on those matters relating to his ADEA claim.

which he feels are persuasive in nullifying the effect of the release. On the one hand, he argues there is a factual question with respect to the "adequacy" of the consideration he received; that is, Plaintiff feels a jury might determine that he did not receive enough consideration in view of the claimed rights he relinquished. Plaintiff also makes a legal argument that waiver of his ADEA claim and the potential relief available to him under the statute, in exchange for the paltry amount of $12,000, should be declared void as a violation of public policy.

■ Plaintiff makes two errors in his reasoning. First, Plaintiff misconstrues the meaning of the concept of adequacy of consideration. As discussed in *Maynard v. Durham & S.R. Co.*, 365 U.S. 160, 163, 81 S.Ct. 561, 563, 5 L.Ed.2d 486 (1961), adequacy of consideration goes to the question of whether there were mutual concessions, that is, in reference to the employee, whether he received something to which he did not already have an absolute right. "The key factor in determining the validity of the release is not the amount of consideration the person giving the release receives, unless it is merely a token amount, but rather whether the person received something for which he was not previously entitled." *Schmitt-Norton Ford, Inc. v. Ford Motor Co.*, 524 F.Supp. 1099, 1103 (D.Minn.1981). Thus, the question of the adequacy of consideration turns not on whether a party received as much as he might have had he litigated the dispute and won, but, rather, whether he received something to which he was not already unquestionably entitled. Plaintiff does not allege that he already had a legal right to the $12,000 increase in the Consulting Agreement, which he received in exchange for executing the release, nor can the Court conclude that $12,000 is a mere token amount. Thus, the Court finds that there

is no genuine issue of material fact as to the adequacy of the consideration. The consideration is deemed to be adequate under the law.

■ With respect to the legal argument raised by Plaintiff, Plaintiff also errs in his interpretation of certain case law in arriving at the conclusion that a release of an ADEA claim cannot be given effect unless the employee received the substantial equivalent of what he would have received had he litigated the matter and succeeded on the merits. To be sure, the Supreme Court has held that an employee may not waive his right to wages and/or overtime compensation and the statutorily prescribed amount of liquidated damages provided under the Fair Labor Standards Act [6] when there is no dispute as to the employer's liability under the Act or when the only dispute concerns whether the employer is covered by the Act. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945); *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946). *See also, Bingham v. Airport Limousine Service*, 314 F.Supp. 565 (W.D. Ark.1970). Similarly, it is well settled that the submission of an employment discrimination claim to arbitration will not bar an employee's subsequent suit in court unless he won in the arbitration proceeding and received the substantial equivalent of what he would have received had he pursued his statutory right in court. *Alexander v. Garner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Stozier v. General Motors Corp.*, 635 F.2d 424 (5th Cir.1981).

But as explained by the Fifth Circuit in *Allegheny-Ludlum*, as well as in *Stozier*, nothing in the above stated propositions

---

**6.** The Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, prescribes, *inter alia*, minimum wage and maximum hour limitations for covered employers. 29 U.S.C. § 216(b) provides that an employer who violates the minimum wage and maximum hour provisions of the FLSA contained in 29 U.S.C. §§ 206 and 207, is liable to the wronged employee(s) for an amount of liquidated damages equal to the amount of wages or overtime compensation owing. Under the ADEA, the employer is only liable for an equal amount of liquidated damages if his ADEA violation was willful. 29 U.S.C. § 626(b).

leads to the conclusion that an employee may not agree to release his disputed employment discrimination claim for less than he might conceivably be awarded were he to litigate his claim and win. *Allegheny-Ludlum,* 517 F.2d at 860–862; *Stozier,* 635 F.2d at 425–426; *Garvin v. Postmaster,* 553 F.Supp. at 687. Were such the case, there would be no motivation for employers to enter into settlement and release agreements concerning disputed employment discrimination or, similarly, agreements concerning disputed FLSA claims as the employee would still be free to litigate his claim if he subsequently became disgruntled with the amount he received. Moreover, the employee would consequently be deprived of the opportunity to avoid unpredictable and potentially expensive litigation of his disputed FLSA or employment discrimination claim. Plaintiff does not cite, nor has the Court identified, any authority which holds that a plaintiff may not agree to release an employment discrimination claim, or for that matter, an FLSA claim, for less than what he might be entitled were he to litigate and win, given that a bona fide dispute exists as to the employer's liability.

■ Based upon the foregoing discussion, the Court concludes that there is no factual question concerning the adequacy of the consideration Plaintiff received for releasing his ADEA claim against Defendant. In addition, the Court finds that the release does not violate public policy nor is its effect otherwise nullified because Plaintiff agreed to accept less than he might have been awarded had he litigated his claim and succeeded on the merits.

As stated above, a finding that a bona fide dispute existed between an employer and employee concerning a decision affecting the employee's status, also has some bearing on whether the employee's release of his potential claims was knowing.[7] Plaintiff's affidavit and deposition filed in this matter establish beyond question that he knew about the ADEA, that he knew he

was within the protected age class and that he suspected his termination was related to age discrimination. Plaintiff, however, argues that, notwithstanding his awareness of such a potential ADEA claim, the Court should not give effect to the release because when he executed the release he did not think, or it was not his intent, that the release would or could serve as a release of his ADEA claim.

■ Arguably, as with other contracts, the intent of the parties executing a release is controlling. See *City of Cleveland v. Cleveland Electric Illuminating Co.,* 538 F.Supp. 1287, 1289 (N.D.Ohio 1980), *citing, Ruskay v. Waddell,* 552 F.2d 392, 395–96 (2d Cir.), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977); *American Commercial Lines, Inc. v. Valley Line Co.,* 529 F.2d 921, 925 (8th Cir.1976); *In re Independent Gasoline Antitrust Litigation,* 79 F.R.D. 552, 559 n. 6 (D.Md.1978); *Grand Motors, Inc. v. Ford Motor Co.,* 564 F.Supp. 34, 42 (W.D.Mo.1982). Though there are circumstances in which a court may look to facts and circumstances surrounding the execution of a release to determine the parties' intent, where the question is the impact of the release on the parties executing it and "where the language of the release is unambiguous, its meaning is to be garnered from the instrument alone." *Grand Motors, Inc. v. Ford,* 564 F.Supp. at 42; *Ingram Corp. v. J. Ray McDermott & Co., Inc.,* 698 F.2d 1295 (5th Cir.1983); *Coester v. H.H.B. Co.,* 447 F.Supp. at 378; *Three Rivers Motors Co. v. Ford Co.,* 522 F.2d 885; *ACF Produce, Inc. v. Chubb/Pacific Indem. Group,* 451 F.Supp. 1095, 1101 (E.D.Pa.1978).

■ In the present action, the Court finds the language of the release to be both clear and unambiguous. By its own terms, Plaintiff waived any claims he might have against NCR arising out of his employment and/or his termination from his employment. That Plaintiff allegedly harbored

---

7. The Court notes that a release of an employment discrimination charge must be both knowing and voluntary. Plaintiff does not, however, argue that his signature on the release stemmed from duress or fraud or was in any way extracted against his will. The Court therefore only addresses whether the release was knowingly executed.

the unspoken belief that he could not waive his ADEA claim simply conflicts with the express language of the release which waives all claims without exception. Moreover, to the extent Plaintiff seeks to avoid the effect of the release, because he signed it with the mistaken belief he was not waiving his ADEA claim, it is well established that only a mutual mistake of a material fact can vitiate the effect of an otherwise valid release or settlement. *See, Kress v. Long Island Railroad,* 526 F.Supp. 856 (S.D.N.Y.1981); *Anderson v. Ciba-Geigy Corp.,* 490 F.2d at 442; *Taylor v. Chesapeake & Ohio Ry. Co.,* 518 F.2d 536 (4th Cir.1975); *DeHart v. Richfield Oil. Corp.,* 395 F.2d 345, 348 (9th Cir.1968); *Coester v. H.H.B. Co.,* 447 F.Supp. at 378. *See also, Pilon v. University of Minnesota,* 710 F.2d at 468. (Plaintiff's claim that she had been misinformed by her attorney as to the effect of release insufficient to avoid preclusive effect of otherwise valid release).

The Court concludes, therefore, that Plaintiff knowingly executed the release in this action and that his subjective, unarticulated beliefs as to the effect of the release on his potential ADEA claim does not in any way serve to limit the scope of the release as executed.

Plaintiff also argues that as a matter of law, the release that he executed cannot serve as a bar to the present action because the release was not "expressly" conditioned upon a release of his ADEA rights. Plaintiff finds support for his contention from note 15 of *Alexander v. Gardner-Davis,* wherein the Supreme court stated:

> In this case petitioner and respondent did not enter into a voluntary settlement expressly conditioned on a waiver of petitioner's cause of action under Title VII. In determining the effectiveness of any such waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing.

*Alexander v. Gardner-Davis,* 415 U.S. at 52, n. 15, 94 S.Ct. at 1021, n. 15.

The Court does not read this note as requiring a release to state which specific employment discrimination claim or claims the employee is releasing or waiving. Arguably it must be clear that any settlement agreed upon is in exchange for the release of whatever claims the employee might have, but the courts that have addressed the issue of release in employment discrimination suits have focused on the two criteria articulated by the Supreme Court in the second sentence of note 15, i.e., that the release be voluntary and knowing. These courts have not read the note as also requiring the release to be worded in a particular fashion. *See e.g., Pilon v. University of Minnesota,* 710 F.2d 466; *Odomes v. NuCare, Inc.,* 653 F.2d 246; *Cox v. Allied Chemical,* 538 F.2d 1094.

■ The Court notes that there may well be situations that arise where the absence of an express relinquishment of a specific Title VII or ADEA claim, within a broadly worded release, may tend towards establishing that the employee did not know he had such a claim or that the form he was signing was in fact a release. In such instances, though, the pivotal inquiry should be whether his release was knowing. Admittedly, the wording of the release may be one of the factors the court may examine to assess the employee's knowledge. Yet, if all of the circumstances surrounding the execution of a release indicate the employee knew he had a potential claim and voluntarily settled and released his claim, the employee should not be permitted to avoid the effect of a broadly worded release or waiver over what would, in such a situation, amount to a technicality in its wording. The release in the present case was specifically a release of any or all claims arising out of the Plaintiff's employment and/or termination of employment at NCR. A similarly worded release was given full effect by the court in *Pilon v. University of Minnesota,* 710 at 467, and the Court is not persuaded that based upon the facts before it, the effect of the release should be vitiated because of the failure to state specifically

that the release included Plaintiff's potential ADEA claim.

■ Plaintiff also seeks to avoid the effect of the release by arguing that when it was executed, in November of 1977, he did not at that time have an ADEA claim because he did not in fact terminate his employment at NCR until May, 1978. Plaintiff's argument asserts that he did not prospectively release his ADEA claim. This argument is without merit in view of the Supreme Court decision in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), wherein the Court held that with respect to the timely filing requirement under Title VII, the time begins to run at the date the employee is informed of his termination, not at the end of the period when he is finally released. The discriminatory conduct, if any, is the decision to terminate, with the actual release merely serving as a result of the prior act of discrimination. *Id. See also, Price v. Litton*, 694 F.2d 963 (4th Cir.1982); *Mogley v. Chicago Title Ins. Co.*, 553 F.Supp. 1045, 1046 (E.D.Mo.1983); *Graves v. University of Michigan, Institute of Continuing Legal Education*, 553 F.Supp. 532 (E.D.Mich.1982). Thus, there simply is no question of prospective waiver in this case, as Plaintiff was informed of his termination in February of 1977, approximately nine months before he executed the release.[8]

■ Finally, Plaintiff attempts to avoid the effect of the release by posing a broad public policy argument that in many respects touches upon issues the Court has already addressed. Plaintiff's argument asserts that an ADEA claim, allegedly valued in excess of $450,000, released without "supervision" in exchange for the meager sum of $12,000 is contrary to public policy

and contravenes the statutory policy of the ADEA. The Court has already stated that it has been generally established that an employee may waive his right to bring a lawsuit to enforce his Title VII or ADEA claim and that such waiver has not been found violative of public or statutory policy but has, to the contrary, been found to be in accord with Congressional intent of obtaining voluntary compliance with its employment discrimination laws. *See, e.g., United States v. Allegheny-Ludlum Industries*, 517 F.2d 826; *Strozier v. General Motors*, 635 F.2d 424.

■ The Court has also discussed Plaintiff's contentions concerning the consideration he received for his release and found the consideration to be adequate and not in any manner contrary to public policy. What remains, then, of Plaintiff's public policy argument is the contention that, notwithstanding the willingness of courts to recognize and give effect to such releases, and notwithstanding the adequacy of the consideration he received, the fact that the execution of the release was "unsupervised" should nullify its effectiveness. Plaintiff attempts to draw support for this argument from 29 U.S.C. § 216, the enforcement provisions for both FLSA and ADEA claims. Specifically, Plaintiff cites 29 U.S.C. § 216(c) which provides that the Secretary of Labor (now the EEOC with respect to ADEA claims) "is authorized to supervise the payment of unpaid, minimum wages or the overtime compensation owing to any employee" and that an employee who accepts full payment owing to him waives his right to sue for the damages that would be available to him were he to have filed a suit.

---

**8.** The Court notes that despite Plaintiff's allegation to the contrary, Plaintiff did not file his charge of employment discrimination with the Secretary of Labor within 180 days of the act of discrimination as required by 29 U.S.C. § 626(d). Plaintiff was informed of his termination in February of 1977, yet he did not file his charge with the Secretary until November 27, 1978, well over 180 days after the alleged discriminatory conduct. Defendant has not argued that Plaintiff failed to timely perform this

condition precedent to bringing the present suit. The timely filing requirement, however, does not go to the subject matter jurisdiction of this Court, but rather is in the nature of a statute of limitations. Thus, this defense is waivable and the Court may determine the merits of Defendant's motion despite Plaintiff's failure to timely file his charge with the Secretary. *Reynolds v. Sheet Metal Workers, Local 107*, 702 F.2d 221 (D.D.Cir.1981).

The Court does not read this provision as requiring the EEOC to supervise all ADEA releases. Rather, this subsection merely provides an alternative route through which an employee may recover the wages and compensation to which he is entitled. The employee may pursue an action on his own pursuant to subsection (b), or the EEOC, pursuant to subsection (c), may intervene and supervise the payment or sue to enforce the employee's right to wages and compensation.

Frequently, in Title VII and ADEA claims, the EEOC will be involved because of the requirement that an employee first file his complaint with the EEOC and allow the EEOC to attempt to work out a conciliation agreement with the employer. *See, e.g., Cox v. Allied Chemical Corp.*, 538 F.2d 1094 (5th Cir.1976); *Watkins v. Scott Paper Co.*, 530 F.2d 1159 (5th Cir.1976). The Court does not hold as a matter of law, however, that the execution of a release *must* be supervised by the EEOC. To be sure, there may well be circumstances wherein this Court would not give effect to a release because an employee lacking knowledge of his rights and potential remedies undertook on his own the negotiation and settlement of his claims against his employer. Such a case, however, is not presently before the Court. Plaintiff is an experienced labor lawyer who admittedly was aware of the ADEA, and presumably had the ability to research, discuss and resolve any questions or uncertainties he might have concerning the effect of the release he signed. Instead, Plaintiff, despite his purported uncertainties as to the effect of the release, chose to accept the consideration offered to him, to execute the release and, apparently, to gamble on this Court's willingness to find the release void as to his ADEA claims. Based on the facts presented to it, the Court finds Plaintiff's argument to be untenable and rejects Plaintiff's contention that, as a matter of law, the release he executed should be nullified because it violates public and/or statutory policy.

In conclusion, the Court finds that there is no genuine issue of material fact concerning the execution of the release and that Plaintiff, as a matter of law, is barred from bringing the present action.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.