Frank J. VALENTI

v.

INTERNATIONAL MILL
SERVICE, INC.

Walter C. BECKWITH

v.

INTERNATIONAL MILL
SERVICE, INC.

Civ. A. Nos. 84–1218, 84–1083.

United States District Court,
E.D. Pennsylvania.

Dec. 23, 1985.

George Wood, Norristown, Pa., for plaintiffs.

Michael F. Kraemer, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

On May 1, 1985 a jury returned a verdict in favor of the plaintiffs, Frank Valenti, Walter Beckwith and Jay Bumpers,[1] finding that defendant, International Mill Service, Inc. ("IMS") had purposefully discriminated against the plaintiffs on the basis of age. Special interrogatories were submitted to the jury requiring them to determine back pay damages as well as front

---

1. Mr. Bumpers reached settlement with the defendant and thus is not a party to the motions before the court.

pay or future damages. After receiving the jury's verdict and damage assessment, and after considering memoranda of law submitted on the issue of the appropriate relief to be granted, the court ruled on August 8, 1985 that in lieu of a money damage remedy, the plaintiffs were to be reinstated to positions comparable to those they held prior to being dismissed by the defendant. Presently before the court are numerous post-trial motions of the defendant and the plaintiffs.

## I. MOTIONS RE: JNOV OR NEW TRIAL

### 1. *Plaintiffs' Motion to Dismiss Defendant's Motion for JNOV or New Trial for Lack of Jurisdiction*

The plaintiffs have moved to dismiss the defendant's motion for JNOV or New Trial for lack of jurisdiction, as the plaintiffs assert the defendant's motions were not timely filed. Reinstatement and judgment was ordered by the court in a Memorandum and Order entered on August 12, 1985. A stipulation signed by the plaintiffs and the defendant (that all post-trial motions required to be filed within ten days of the date of judgment must be filed by August 29th) was authorized by the court and entered on August 16th. An amended judgment was entered on August 20th. On August 29th the defendant's motions for JNOV and new trial were entered.

The plaintiffs cite Fed.R.Civ.P. 6(b) as authority for their claim that parties may not stipulate to an extension of time for the filing of a motion JNOV or new trial, and claim the amended judgment of August 20th "amounted to no more than a clerical correction." The court disagrees. The final judgment of the court is the amended order entered on August 20, 1985, which clarified and established the legal rights of the parties. Accordingly, the defendant's motions were timely filed when entered on August 29, and the plaintiffs' motion to dismiss them will be denied.

### 2. *Defendant's Motion for Judgment Notwithstanding the Verdict ("JNOV")*

#### *Voluntary and Knowing Release*

On March 15, 1982, plaintiff Frank Valenti signed a termination letter, a non-compete agreement, and an employee innovation and non-disclosure agreement. The letter offered Valenti benefits, including salary in excess of $27,000; health, dental, and life insurance; and other services. The defendant claims these benefits were given to Mr. Valenti in exchange of signing the letter, which the defendant claims constitutes an explicit release of all claims against the defendant, including civil rights claims. The plaintiff claims the benefits were given to him in exchange for signing the non-compete and non-disclosure agreements and for acting as a consultant upon demand. The plaintiff asserts the release language in the letter cannot be construed as a release of civil rights claims against the defendant, and that the documents cannot be viewed as a release because the plaintiff did not voluntarily and knowingly release the defendant. The defendant argues that the alleged release of claims requires the court to grant its JNOV motion.

A waiver of a federal remedial right is not to be taken lightly. *E.E.O.C. v. United States Steel Corp.*, 583 F.Supp. 1357, 1361 (W.D.Pa.1984). There can be no prospective waiver of an employee's rights under Title VII and where an employee waives his cause of action under Title VII as part of a voluntary settlement, the court must determine that the employee's consent was voluntary and knowing. *Id.*, citing *Alexander v. Gardner-Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

The defendant asserts the release language is clear and unambiguous ("In consideration of the foregoing, you hereby release IMS ... from any and all actions, causes of actions, claims and demands whatsoever ..."). Further, the defendant claims Mr. Valenti was aware of his rights under the ADEA because he served as Chief Personnel Officer at IMS for almost five years. The defendant also asserts

that Mr. Valenti testified he was aware his age was a key factor in the termination decision at the time he signed the letter. Based on these assertions, the defendant claims that Mr. Valenti entered into a valid release of his discrimination claim, and that there are no vitiating circumstances of fraud, duress, lack of consideration, or mutual mistake of fact.

■ The court finds that the termination letter used by IMS, dated March 15, 1982, cannot operate as a release in this case and thus does not warrant support of the defendant's motion for JNOV. First, the letter does not expressly refer to a waiver of a federal right. Second, the circumstances surrounding the execution of the letter were not in the context of the settlement of a disputed claim, because no claim had been filed. "In most cases where a release or waiver of Title VII rights has been part of a settlement, a legal claim or claims has first been asserted, either by way of EEOC charges or actions in court or both.... In this regard, a release is not a device to exempt from liability but is a means of compromising a claimed liability...." *E.E.O.C. v. U.S. Steel*, 583 F.Supp. at 1362. Third, Mr. Valenti was not represented by his own attorney. The defendant claims the plaintiff's experience likens the circumstances of this case to those in *Runyan v. NCR*, 573 F.Supp. 1454 (S.D.Ohio 1983) which upheld the release of an ADEA claim. *Runyan* was overturned on appeal, *Runyan v. NCR*, 759 F.2d 1253 (1985); the opinion was subsequently vacated by the Sixth Circuit and rehearing en banc is pending. Regardless of the ultimate result in *Runyan*, the court finds that Mr. Valenti's experience as a personnel officer does not meet that of the plaintiff in *Runyan* —"An experienced labor law attorney who admittedly was aware of the ADEA, and presumably had the ability to research, discuss and resolve any questions or uncertainties he might have concerning the effect of the release he signed." *Runyan*, 573 F.Supp. at 1464. Fourth, evidence was produced at trial that Mr. Valenti's action in signing the letter was not voluntary and knowing, and the jury answered a specific interrogatory on the issue, and found that the signing was not voluntary and knowing.

In summary, the circumstances surrounding the execution of the letter do not indicate that Mr. Valenti knew he had a potential claim under the ADEA and voluntarily settled and released this claim. Accordingly, JNOV with respect to plaintiff Valenti is not appropriate on the basis of a release.

### Discrimination and Willfullness

The defendant has moved the court to enter JNOV on several grounds in addition to the issue of the 'release letter'. The defendant claims that competent evidence was not introduced to establish a prima facie case of discrimination, and claims findings that the defendant discriminated against the plaintiffs because of their age, that the nondiscriminatory reasons for discharge were pretextual, and that the defendant willfully violated the ADEA cannot be sustained. The court finds none of these arguments to be persuasive, and will deny the defendant's motion for JNOV.

The purpose of a motion for JNOV is not to relitigate the case. *See Duffy v. Wheeling Pittsburgh Steel Co.*, 738 F.2d 1393 (3d Cir.1984). In considering the motion, the court must review the evidence in the light and with all reasonable inferences most favorable to the party who secured the jury verdict. *Fireman's Fund Insurance Co. v. Videfreeze Corp.*, 540 F.2d 1171 (3d Cir. 1976), *cert. denied* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977).

The defendant puts forth three reasons why the court should enter a JNOV. The defendant claims the findings of the jury are contrary to the evidence and are based on speculation and emotion, that no competent evidence was introduced to establish that the stated reasons for the terminations were pretexts for age discrimination, and that the determination IMS acted willfully in discharging the plaintiffs in violation of the ADEA was not supported by the evidence. However, the record reveals that testimony and exhibits provided the jury

with a basis for supporting the plaintiffs' claims. This evidence includes, *inter alia,* the Harris memo of December 29, 1981 and the accompanying list, which the plaintiffs assert provides direct proof of age discrimination by setting forth details (ages and years of service) of those selected for "early retirement", the statements of Mr. Bayer and other IMS officials, the performance evaluations, salary increases and bonuses awarded to the plaintiffs, and the fact that positions became available which were filled by younger employees without being offered to the plaintiffs.

■ Defendant claims the jury's verdict was based on "rank speculation" and sympathy. The defendant points to the evidence of industry wide decline at the time of the terminations, as well as a lack of statistical correlation between age and termination in the March, 1982 reduction in force. However, the jury heard testimony on these issues at trial; furthermore, even if the jury accepted this testimony as fact, it is not necessarily dispositive of the underlying claims. The statements of IMS officers, memoranda of IMS officers, performance evaluations, and hiring patterns—if believed by the jury—constitute evidence of a prima facie case of discrimination, and of the pretextual nature of the explanation proffered by the company. It is not the court's function to review inconsistencies in the evidence and determine which testimony is credible; to do so would require de novo review of each credibility determination and would undermine the province of the jury. *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393 (3d Cir.) *cert. denied,* — U.S. —, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984). Accordingly, the defendant's motion for JNOV will be denied as the evidence was legally sufficient to warrant the verdicts reached.

### 3. *Defendant's Motion for New Trial*

The defendant has moved for new trials on the basis of four grounds. Each ground will be addressed by the court in the order presented by the defendant.

### *Weight of the Evidence*

IMS argues that the verdicts should be set aside as contrary to the preponderance of the evidence, and new trials ordered. The defendant emphasizes the uncontested evidence of a sharp business decline in the steel industry in late 1981 and early 1982, and claims the termination decisions at issue were made in response to this decline, as part of an austerity program. The defendant attributes the verdict to the jury's sympathies for the plaintiffs. The defendant cites *Leichihman v. Pickwick International,* 589 F.Supp. 831 (D.Minn.1984) as presenting a case with similar facts, where the court determined a new trial was necessary.

A trial court should not set a verdict aside merely because the court would have come to a different conclusion had it been the trier of the facts; the trial court should not interfere with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. *Lind v. Schenley Industries, Inc.,* 278 F.2d 79, 89 (3d Cir.1960).

■ The defendant's argument cannot succeed in the circumstances of this case because a reduction of forces does not neutralize the effect of the ADEA. Furthermore, the facts in this case are not as unbalanced as those in the *Leichihman* case cited by the defendant. In *Leichihman* there were more drastic and uniform layoffs, and divestments of entire divisions of companies. The court found the plaintiff Leichihman's case to be based largely on circumstantial evidence. Here, the plaintiffs focussed their case on testimony regarding statements by IMS officials and on IMS documents. To act on the basis of the weight of this evidence to order a new trial would, at least to a substantial extent, involve substituting the court's judgment of the facts and credibility of witnesses for that of the jury. This would be an unacceptable result. *Lind,* 278 F.2d at 90.

### *Evidence of the Value of Fringe Benefits*

The defendant claims that the value of fringe benefits was improperly put into the

record (Exhibit V–416.45–416.85) and testified to by the plaintiffs' expert, resulting in an excessive verdict. This argument is based on the defendant's assertion that while a plaintiff under the ADEA is entitled to be made whole for his losses, he is not entitled to "excessive damages based upon insurance premiums he did not pay, 'double-dipping' for vacation entitlement, or the 'value' of pension plan contributions." (Defendant's brief at 48). The plaintiffs counter by claiming the jury's verdict as to the damages is supported by substantial, legally credible evidence, and point to testimony regarding certain purchases by the plaintiffs of medical, life, disability and health insurance and the purchase of medications which would have been paid for by the defendant.

The goal of the ADEA is to restore a victim of discrimination to the economic position he or she would have occupied but for the employer's unlawful conduct. *Rodriguez v. Taylor*, 569 F.2d 1231, 1238 (3d Cir.1977). Therefore, the touchstone in calculating damages is the "make whole" standard of relief. The plaintiffs did not testify that they obtained dental or travelers insurance or some of the other benefits set forth in exhibit V–415.46—416.85. While the plaintiffs are entitled to an award for expenses actually incurred for insurance and medications, they are not entitled to an award for items for which they suffered no loss. Such an award would be punitive rather than remedial. Furthermore, the jury's verdict may also be excessive because of testimony regarding the value of pension contributions which IMS would have made into the IMS Salaried Pension Plan on behalf of the plaintiffs from 1982 through 1985. The pension contributions were submitted to the jury over the defendants' objections. According to the defendant, because the plaintiffs have been reinstated to employment, as required by the court's order of August 8, 1985, their pension rights are undiminished in spite of their absence from 1982–1985 (Defendant's brief at 47).

In summary, the damages awarded by the jury's verdict may be improper and excessive due to the jury's access to testimony and exhibits regarding benefits which should not be included in the damages calculations. These facts support a new trial for the determination of back pay damages.

*Jury's Answers to Interrogatories*

The defendant claims new trials are required because the jury failed to follow or answer the interrogatories submitted by the court on the issue of damages. The interrogatories at issue are Questions 4, 5 and 6 in the Beckwith case and Questions 6, 7 and 8 in the Valenti case. The jury was instructed to provide a computation of each plaintiff's earnings, including benefits, "for the time period of his termination at IMS to today's date", the amount of wages and benefits for the same period of time, and the net amount of future wages and benefits each would have earned from the date of trial until each plaintiff's retirement. However, the jury calculated the backpay to December 31, 1985 and the frontpay beginning January 1, 1986.

In effect, the jury arrived at a damage figure for past earnings through December 31, 1985, rather than through the date of trial. Since the plaintiffs have been reinstated at IMS, the past wage loss found by the jury is too high. The plaintiffs claim this is harmless error and that "a fifth grade math student could adjust the backpay." The court does not find that this error could be corrected by remittitur. Given the disparities in salary continuation for each plaintiff and differing interim earnings at various times since their terminations, the court cannot simply cut off a number of months on a "pro rata" basis. The determination of what the losses are through the date of trial relate to interim earnings, for example, and there is no evidence as to what the jury believed the interim earnings from the date of trial to the end of year would be. The jury's action in changing the dates on which to base

the calculations of back pay supports a new trial limited to back pay damages.

*Consolidation*

█ The defendant claims the consolidation of the three cases prejudiced it before the jury, as evidence bearing on the exclusive claim of each individual plaintiff, but unrelated to the other two plaintiffs, was presented. The defendants claim the plaintiffs produced no evidence of a common plan or pattern and practice of discrimination. The court is not persuaded by the defendant's argument. The plaintiffs presented evidence that they were all terminated within the same month, and presented documents "reorganization plans" which listed the defendant's employees and their ages. Furthermore, the court employed special interrogatories and points of charge to ensure that each case stood on its own. Each plaintiff alleged that their dismissal resulted from a common plan of the defendants to terminate older employees in an effort to reduce costs; as the same crucial issue was the focus in each case, consolidation of the actions was appropriate.

*Conclusion*

Given the arguments presented by the defendant with respect to the valuations of benefits presented to the jury and the jury's actions in answering interrogatories, the court concludes that the defendant's motion for a new trial will be granted to a limited extent: the court shall order that a partial new trial limited to damages for back pay be held. The court finds that the issues of liability and willfulness have been properly determined, and will not be disturbed.

## II. PLAINTIFFS' POST TRIAL MOTIONS

1. *Plaintiffs' Motion for Reconsideration of Motion to Stay Order of Reinstatement of Plaintiff, or in the Alternative, Order an Immediate Hearing on the Matter and Order Discovery on the Issue.*

Plaintiffs' motion for reconsideration of motion to stay order of reinstatement, or in the alternative order a hearing, is moot. The plaintiffs were reinstated at IMS as of September 16, 1985.

2. *Plaintiffs' Motion to Amend the Judgment*

Various motions by the plaintiff to amend the judgment are moot given the decision by the court to order a partial new trial to determine back pay damages. Thus, the following motions are moot: motion to amend the judgment to add interest from the date of verdict and post judgment interest and to mold the verdict for back pay to the date of reinstatement; motion to amend the judgment to recover for loss of social security benefits; motion to amend the judgment to provide for full pension benefits upon plaintiffs' retirement; and motion to amend the judgment for income tax consequences.

3. *Plaintiffs' Motion to Reconsider and Rescind the Order of Reinstatement, and Motion in the Alternative to Rescind the Order of Reinstatement to Reinstate Plaintiff to the Position He Would Have Held Had He Not Been Illegally Terminated.*

The plaintiffs have not provided the court with new facts or arguments regarding the court's conclusion that reinstatement, rather than front pay, was appropriate to remedy the discrimination found by the jury. The court has considered and has ruled on all points raised by the plaintiffs. Accordingly, the plaintiffs' motion to reconsider and rescind the order of reinstatement will be denied.

In the alternative, the plaintiff has moved to amend the reinstatement order. Plaintiff Valenti was reinstated to a job as a marketing manager in Whiting, Indiana. Mr. Valenti wants the official location of his marketing manager job to be Philadelphia, Pennsylvania, which would entail that the defendant absorb any additional travel expenses which may result. The defendant

argues that Mr. Valenti has been "made whole" as he is receiving top salary, working in a meaningful position, and receiving full benefits. The defendant claims it has made all possible efforts to accommodate Mr. Valenti, and that a position was vacant in Whiting, and simply unavailable in Philadelphia. The defendant also emphasizes that a great number of lateral transfers occur within IMS.

The plaintiffs assert that the burdens involved in moving to Indiana frustrate the reinstatement order's purpose of making Mr. Valenti whole. They claim the defendant has assigned Mr. Valenti to Indiana as punishment for bringing suit against the company.

The court is swayed by two factors in reaching a decision that Mr. Valenti should be allowed to consider Philadelphia his job's 'home-base'. First, whether he is located in Whiting or in Philadelphia, the job will entail travelling to the mill sites he services. The court does not believe that leaving from an airport in the Chicago area is significantly more economical or efficient than leaving from an airport in the Philadelphia area. This is reinforced by the fact that the defendant has stated in its memorandum that the mills which had been serviced by Mr. Valenti prior to his illegal termination are now being serviced by marketing executives based in Pittsburgh and Philadelphia, as well as in Whiting. Second, testimony at oral argument of the post-trial motions revealed that the defendant company does not have a mandatory transfer policy. While witnesses for the defendant testified that many employees have transfered to new locations, cross-examination revealed that no employee was forced to transfer who did not want to transfer.

The court concludes that, but for the illegal termination of his job, Mr. Valenti would be employed by IMS in a position based in Philadelphia. The defendant claims it is necessary that Mr. Valenti be based in Whiting in order to coordinate office functions and to minimize travel expenses. Given that other marketing managers are located in Pittsburgh and Philadelphia, and that forcing Mr. Valenti to relocate in Indiana involves substantial financial and social costs for him, the court will order the defendant to make the plaintiff Frank J. Valenti whole by acknowledging Philadelphia, Pennsylvania as the base for his position as marketing manager.

## ORDER

AND NOW, this 23rd day of December, 1985, upon consideration of the post-trial motions of the plaintiffs, Frank J. Valenti and Walter C. Beckwith, and the defendant, International Mill Service, Inc., and the parties' memoranda of law, and for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. Plaintiffs' motion to dismiss the defendant's motions for JNOV and new trial for lack of jurisdiction is DENIED.

2. a. Defendant's motion for judgment notwithstanding the verdict is DENIED.

b. Defendant's motion in the alternative that the verdicts be set aside and new trials ordered is GRANTED to the following extent: a partial new trial limited to the issue of calculating back pay damages is ORDERED. The jury's finding of liability and willfulness on the part of the defendant will stand.

3. Plaintiffs' motion for reconsideration of motion to stay order of reinstatement of plaintiffs, or in the alternative, order an immediate hearing on the matter and order discovery on the issue is DISMISSED AS MOOT.

4. In view of the order for a partial new trial on damages:

a. Plaintiffs' motion to amend judgment to add interest from the date of verdict and post-judgment interest and to mold the verdict for back pay to the date of reinstatement is DISMISSED AS MOOT;

b. Plaintiffs' motion to amend the judgment to recover for loss of social security benefits is DISMISSED AS MOOT;

c. Plaintiffs' motion to amend the judgment to provide for full pension benefits upon plaintiff's retirement is DISMISSED AS MOOT; and

d. Plaintiffs' motion to amend the judgment for income tax consequences is DISMISSED AS MOOT.

5. a. Plaintiffs' motion to reconsider and rescind the order of reinstatement is DENIED.

b. Plaintiffs' motion, in the alternative, to rescind the order of reinstatement to reinstate plaintiffs to positions they would hold had they not been illegally terminated is GRANTED to the following extent: it is ORDERED that plaintiff Frank J. Valenti's employment position of marketing manager is to be based in Philadelphia, Pennsylvania.