William B. GORMIN, et al., Plaintiffs,

v.

BROWN–FORMAN
CORPORATION, Defendant.

No. 88–1036–Civ–T–15C.

United States District Court,
M.D. Florida,
Tampa Division.

July 11, 1990.

Edward E. Fessenden, Jr. and Allen M. Blake, Tampa, Fla., and Norman B. Smith, Smith, Patterson, Follin, Curtis, James, Harkavy & Lawrence, Greensboro, N.C., Gerald S. Kiel, J. Kenneth L. Morse, Debra M. Lawrence, E.E.O.C., Baltimore, Md., for plaintiffs.

Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, Tampa, Fla., Kenneth J. McCulloch, Kramer & Levin, New York City, and J. Craig Peyton, Weinberg & Green, Baltimore, Md., for defendant.

ORDER

CASTAGNA, District Judge.

The Court now turns attention to the several pending motions in this consolidated age discrimination action.

## I.

First to consider is the motion by the Equal Employment Opportunity Commission [EEOC] for leave to intervene (D–84).[1] Since filing this motion, the EEOC filed its own lawsuit against the defendant raising the same claims, and the separate suits have been consolidated (D–9 of Case No. 89–1331). Under these circumstances the motion to intervene is moot, as intervention has effectively been accomplished through consolidation.

Consolidation has also effectively mooted defendant's motion to dismiss (D–91). The motion to dismiss suggests that, since some of the plaintiffs who had opted into the original suit, Case No. 88–1036, subsequently became involved as plaintiffs in Case No. 89–1185, and there raised the same claims, their claims here should be dismissed. Whether or not defendant's contentions are correct, any defect of which the defendant complains has been remedied by bringing all plaintiffs together into one suit.

Plaintiff's motion for leave to amend complaint (D–101) requests leave to add Jack Adams as a named plaintiff and William Gormin as an opt-in plaintiff. The Court finds no substantial reason to deny the relief requested. See *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir.1984).

## II.

Defendant's motion for dismissal and summary judgment against plaintiff Gormin (D–106) contends that Gormin failed to file a timely charge with the EEOC and that his claims are barred by a release signed by him. On November 19, 1986, before bringing this suit, Gormin signed a severance agreement with defendant for which he received, among other things, sixty-one weeks of pay, which came to $56,-003.00. The agreement provides that "the severance pay is consideration for your complete and total release of all claims of whatsoever nature you may have against Brown–Forman, its subsidiaries, divisions,

officers, agents, or assigns, now or in the future...." The last line repeated the effect of the agreement: "I have read the terms and conditions of my termination of employment and fully understand my signature is a voluntary release of any claims of whatever nature I have against Brown–Forman."

Gormin contends that the release is unenforceable as a matter of law. Claims for back wages based on the Fair Labor Standards Act [FLSA], 29 U.S.C. § 201 et seq., may not be settled unless the settlement agreement is approved by the Secretary of Labor or by the court where the suit is filed. *Lynn's Food Stores v. United States*, 679 F.2d 1350 (11th Cir.1982); see *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The Age Discrimination in Employment Act [ADEA], 29 U.S.C. § 621 et seq., provides that the "Act shall be enforced in accordance with the powers, remedies, and procedures provided in ... the Fair Labor Standards Act...." 29 U.S.C. § 626(b). Plaintiff argues that because the ADEA incorporates the procedural framework of the FLSA, and because unsupervised settlements of FLSA claims are not allowed to bar a subsequent action, it follows that unsupervised settlements of ADEA claims should also not be upheld.

A controversy currently rages over how unsupervised settlements of ADEA disputes should be treated. Those involved in this tempest include not only the courts, but also the Congress and the EEOC. As no rule has yet been established in this Circuit on the question, it is appropriate to review the debate in some detail.

### A.

The Age Discrimination in Employment Act of 1967 generally prohibits employment discrimination because of age. President Johnson recommended the Act to the Congress on January 23, 1967, and present-

---

**1.** All citations to docket numbers are to the original Case No. 88–1036 unless otherwise indicated.

ed the following message concerning why the law was necessary:

> Hundreds of thousands, not yet old, not yet voluntarily retired, find themselves jobless because of arbitrary age discrimination. Despite our present low rate of unemployment, there has been a persistent average of 850,000 people age 45 and over who are unemployed. Today more than three-quarters of the billion dollars in unemployment insurance is paid each year to workers who are 45 and over. They comprise 27 percent of the unemployed, and 40 percent of the long-term unemployed.

1967 U.S.Code Cong. & Ad.News 2213, 2214. The Congress agreed that "the incidence of unemployment, especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability is, relative to the younger ages, high among older workers; their numbers are great and growing; and their employment problems grave...." 29 U.S.C. § 621(a)(3).

Enforcement of the ADEA was originally entrusted to the Secretary of Labor, who was to act according to the procedures provided in the FLSA. 29 U.S.C. § 626(b). In 1978 all functions of the Secretary of Labor were transferred by President Carter to the EEOC. Reorg. Plan No. 1 of 1978, 3 C.F.R. § 321, 43 Fed.Reg. 19,807 (1978).

The debate over the validity of unsupervised waivers of age discrimination claims may be divided into two basic positions. See generally Note, *Waivers Under the Age Discrimination in Employment Act: Putting the Fair Labor Standards Act Criteria to Rest,* 55 Geo.Wash.L.Rev. (1987); Note, *Waiver of Rights Under the Age Discrimination in Employment Act of 1967,* 86 Colum.L.Rev. 1067 (1986). One side makes the plaintiff's argument that the ADEA's incorporation of the FLSA enforcement provisions includes the case law which provides that unsupervised waivers of rights may not bar subsequent litigation. The other side, here represented by the defendant, disputes this interpretation, and instead contends that the standards enunci-ated in Title VII, 42 U.S.C. § 2000e, cases should apply. Claims under Title VII may be privately settled provided the employee's waiver of rights was "knowing and voluntary." *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021 n. 15, 39 L.Ed.2d 147 (1974).

### B.

A review of the opinions by courts confronted with purported waivers of ADEA claims shows that the clear majority rule is to uphold such agreements provided they meet the knowing and voluntary standard of Title VII law. *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); *Coventry v. United States Steel Corp.,* 856 F.2d 514 (3d Cir.1988); *E.E.O.C. v. Cosmair, Inc.,* 821 F.2d 1085, 1091 (5th Cir.1987); *Moore v. McGraw Edison Co.,* 804 F.2d 1026, 1033 (8th Cir.1986); *Runyan v. Nat'l Cash Register Corp.,* 787 F.2d 1039 (6th Cir.1986) (en banc), *cert. denied,* 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986); *Duke v. Uniroyal, Inc.,* 719 F.Supp. 428 (E.D.N.C.1989); *Widener v. Arco Oil and Gas Co.,* 717 F.Supp. 1211 (N.D.Tex.1989); *DiMartino v. City of Hartford,* 636 F.Supp. 1241 (D.Conn.1986); *Valenti v. International Mill Serv.,* 634 F.Supp. 57 (E.D.Pa.1985); *Bernstein v. Consolidated Foods Corp.,* 622 F.Supp. 1096, 1105 (N.D. Ill.1984); *E.E.O.C. v. United States Steel Corp.,* 583 F.Supp. 1357 (W.D.Pa.1984). Indeed, the only authority contrary to the foregoing is the panel decision in *Runyan,* which was rejected by the Sixth Circuit en banc. *Runyan v. Nat'l Cash Register Corp.,* 759 F.2d 1253, 37 Fair Empl.Prac. Cas. (BNA) 1086 (6th Cir.1984), *vacated,* 38 Fair Empl.Prac.Cas. (BAN) 5 (1985). With all due respect to these foregoing authorities, and only after careful consideration of each, the Court is persuaded that the reversed panel decision presents the proper rule.

### C.

At bottom, the question is one of statutory construction. When a court in-

terprets the meaning of a statute, it must first look to the plain language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978). The ordinary meaning of the language of the statute will control in all cases unless it is found contrary to a clearly expressed legislative intention. *North Dakota v. United States,* 460 U.S. 300, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983); *American Tobacco Co. v. Patterson,* 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982).

Nowhere in the text of the Age Discrimination in Employment Act is there any reference to Title VII. Instead, the Act cites to the Fair Labor Standards Act, and expressly provides that the Act "shall be enforced in accordance with the powers, remedies, and procedures provided in ... the Fair Labor Standards Act of 1938...." 29 U.S.C. § 626(b). Moreover, "[a]mounts owing to a person as a result of a violation of this Act shall be deemed to be unpaid minimum wages or unpaid overtime compensation...." *Id.* Through these provisions the Congress clearly provided that the procedural framework of the FLSA was to be incorporated into the ADEA.

In *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) the Supreme Court was faced with the question of whether plaintiffs to age discrimination actions had the right to a trial by jury. Appellants there contended that there is no right to a jury trial in a Title VII case, and that accordingly there should be no right to a jury trial in ADEA actions. Appellant's position in *Lorillard* parallels defendant's argument here, and also parallels the reasoning of the courts which have upheld the waiver of rights under the ADEA. In a unanimous decision, the *Lorillard* Court

rejected the argument that Title VII rules of procedural law should, by analogy, apply to ADEA suits.

The Court observed that the "enforcement scheme for the statute is complex—the product of considerable attention during the legislative debates preceding passage of the Act." *Id.* at 577–78, 98 S.Ct. at 868. After much debate and the consideration of several different plans, the Congress settled on a plan under which "violations of the ADEA generally are to be treated as violations of the FLSA." *Id.* The Court then noted that, prior to the passage of the ADEA, it had been established that there was a right to a jury trial in FLSA cases. It followed that "where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law ..." *Id.* at 581, 98 S.Ct. at 870. The opinion closes with the Court's rejection of the view that the ADEA should be construed by comparing it to Title VII:

> Finally, rather than adopting the procedures of Title VII for ADEA actions, Congress rejected that course in favor of incorporating the FLSA procedures even while adopting Title VII's substantive prohibitions. Thus, even if petitioner is correct that Congress did not intend there to be jury trials under Title VII, that fact sheds *no light on congressional* intent under the ADEA. Petitioner's reliance on Title VII, therefore, is misplaced.

*Id.* at 584–585, 98 S.Ct. at 872. Given *Lorillard,* it is appropriate to ask whether unsupervised releases are enforceable for FLSA cases. If so, *Lorillard* teaches that Congress is presumed to have intended that rule to also apply to releases under the ADEA.[2]

2. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) is not to the contrary. In that case the Supreme Court relied on Title VII precedent to aid in construction of provisions of the ADEA concerning exhaustion of state remedies. The language of the ADEA provision, 29 U.S.C. § 633(B) had been taken directly from Title VII, 42 U.S.C. § 2000e–5(c).

As essentially the same language was under consideration in *Oscar Mayer* as had been considered in cases construing Title VII, and because Congress had intentionally borrowed the Title VII language for the relevant ADEA provision, albeit without reference to Title VII, the Court ruled that Congress must have intended the same result as under Title VII. *Id.* at 755–

Such was the course taken by the Sixth Circuit en banc in *Runyan,* the case that most thoroughly discusses the issue. The other appellate level opinions which have ruled that ADEA releases are enforceable have largely relied on *Runyan's* examination of the question.

The rule in the Eleventh Circuit is clear that any release of rights under the FLSA is invalid unless approved by the appropriate government agency or by a district court. *Lynn's Food Stores,* 679 F.2d at 1352–1355. Prior to 1968, the year of passage of the ADEA, the Supreme Court had twice rejected claims that releases of rights under the FLSA should be enforced so as to bar a subsequent suit. *Gangi,* 328 U.S. at 115–116, 66 S.Ct. at 928–29; *Brooklyn Savings Bank,* 324 U.S. at 706–710, 65 S.Ct. at 902–03. *Runyan* stakes its all, however, on footnote ten, and the supporting text thereto, of *Gangi,* 328 U.S. at 114–115, 66 S.Ct. at 928, where the Court noted that it was not there faced with the question of whether compromises of factual, rather than legal, disputes should be upheld. The footnote cited a district court opinion which indicated, in dicta, that a legitimate compromise of a bona fide dispute over the number of hours worked might be upheld. *Strand v. Garden Valley Tel. Co.,* 51 F.Supp. 898, 904–905 (D.Minn.1943).

This construction is contrary to the long established rule that an employee's rights under the FLSA may not be waived by an unsupervised release. *Brooklyn Savings Bank,* 324 U.S. at 707, 65 S.Ct. at 902; *Lynn's Food Stores,* 679 F.2d at 1352–1355; *Brennan v. Veterans Cleaning Serv.,* 482 F.2d 1362, 1370 (5th Cir.1973); *Wirtz v. Turner,* 330 F.2d 11, 14 (7th Cir. 1964); *Shultz v. Bob Johnson Meat Co.,* 306 F.Supp. 720, 722 (C.D.Cal.1969). This rule follows from Congress' "recognition of

the fact that due to the unequal bargaining power as between employer and employee ... certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...." *Brooklyn Savings Bank,* 324 U.S. at 706, 65 S.Ct. at 902. This Court is not persuaded that the disadvantage of older workers with respect to bargaining over issues of law can be any different than bargaining over issues of fact. This is particularly true where, as here, the severance agreement is made long before any real adversarial dispute ripens.

In the normal situation, employees do not know which of their co-workers are also being terminated when their employer makes a take it or leave it severance offer.[3] Employees are likely to know, however, that "older workers find themselves disadvantaged in their efforts to retain employment...." 29 U.S.C. § 621. Indeed, several of the courts which have adopted the knowing and voluntary standard have applied it with full recognition of the fact that older workers, as compared to their employers, do not have equal bargaining power, and so any resulting agreement is probably not voluntary. *Runyan* is easily distinguishable for these courts, as the plaintiff in that case was an experienced labor lawyer who signed the agreement expecting that no court would enforce it. See *Coventry,* 856 F.2d at 524; *Valenti,* 634 F.Supp. at 60; *Bernstein,* 622 F.Supp. at 1106. Compare *Bormann,* 875 F.2d at 402 ("We sympathize with the dilemma of older workers who, after many years of employment, are offered enhanced termination benefits for a waiver of legal rights."). These courts recognize that the typical ADEA plaintiff who had signed a severance waiver agreement had faced little more than a Hobson's choice. This Court

---

756, 99 S.Ct. at 2071. This case does not involve the construction of a statutory provision with language in haec verba with another statutory provision, and so *Oscar Mayer* is inapposite.

**3.** The evidence in this suit shows that defendant had a conscious purpose of concealing the scope of terminations from each worker. Those who were to tell each worker that they were fired were instructed: "Do not have a list of terminat-

ed employees in view of the person being terminated." (D–120 at 12). If anyone were to ask "Who all is affected?" the necessary response was: "This reorganization involves many assignments and reassignments that are still going on. Everyone will be contacted. I am not able to discuss with you specific names and/or assignments." *Id.*

agrees with that appraisal, goes further only by ruling that Congress also saw the situation in this light, and so intended that all such agreements be void.

■ The decision to apply the enforcement scheme of the FLSA to age discrimination cases reflects Congress' determination that older workers are among those at a disadvantage such that unsupervised waivers of ADEA rights should not be respected. This finding is supported by recent activities of Congress on the question of unsupervised release of ADEA rights. These activities were prompted largely by the above discussed cases, and also by the EEOC's approval of a new regulation which would uphold such waivers.

### D.

*Runyan,* and several of the other courts which have ruled that unsupervised releases of ADEA claims are enforceable, have relied in part on a 1987 EEOC regulation, 29 C.F.R. § 1627.17(c). *Coventry,* 856 F.2d at 523 n. 10; *Cosmair,* 821 F.2d at 1091; *Runyan,* 787 F.2d at 1045; *Duke,* 719 F.Supp. at 432. This rule provides guidelines for determining whether waivers of ADEA claims were knowing and voluntary; if so, the rule provides that the waiver should be enforced. While it is normally appropriate to rely on such administrative regulations for guidance in statutory interpretation, *see, e.g., Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), this regulation has only served to confuse the issue.

Before responsibility for enforcement of the ADEA was transferred to the EEOC, the Department of Labor was responsible for enforcement of the ADEA. Labor's view had always been that unsupervised waivers of ADEA rights were void. 135 Cong.Rec. S 356 (Jan. 3, 1989) (statement of Sen. Metzenbaum); 134 Cong.Rec. S 14509, 14510 (Sept. 26, 1988) (statement of Sen. Metzenbaum) (citing testimony before the Senate Subcommittee on Labor by former and current Solicitors of Labor). The Department of Labor continues to hold that view for all FLSA waivers, for which Labor remains responsible. *Id.* The Eleventh Circuit adopted the Labor Department's interpretation of the law, which was based firmly on then-existing precedent, in *Lynn's Food Stores,* 679 F.2d at 1352–1355. See Letter from Fred W. Alvarez, Assistant Secretary of Labor and George R. Salem, Solicitor of Labor to Senator Howard Metzenbaum (May 20, 1988), *reprinted in* 134 Cong.Rec. S 14509, 14510 (Oct. 4, 1988) ("The court in *Lynn's Food Stores, Inc.* adopted the Department's view of the law with respect to waivers under the FLSA, as set forth in its brief filed with the Court"). However, in 1985 the EEOC began consideration of a rule which would reverse this well established policy by allowing unsupervised waivers of ADEA claims. Two years later that course was officially taken with 29 C.F.R. § 1627.17(c).

Congressional reaction to this abrupt departure from prior policy was swift and sure. Each appropriations bill since the rule was finalized has expressly provided that the rule shall not be effective during that fiscal year, and that no funds may be spent to give effect to the rule. Pub.L. No. 101–162, 103 Stat. 988, 1020 (1989) ("the final rule regarding unsupervised waivers under the [ADEA] issued by the Commission ... shall not have effect during fiscal year 1990 [and] none of the funds may be obligated or expended by the Commission to give effect to any policy or practice pertaining to unsupervised waivers under the [ADEA]...."); Pub.L. No. 100–459, 102 Stat. 2186 (1988) (same for fiscal year 1989); Pub.L. No. 100–202, 101 Stat. 1329, 1329–31 (1987) (same for fiscal year 1988). Additionally, bills are now pending in both the House and Senate which would clarify the ADEA so as to reverse those cases which have upheld unsupervised waivers of age discrimination claims. H.R. 1432, 101st Cong., 1st Sess. (1989); S. 54, 101st Cong., 1st Sess. (1989) (each bill titled the Age Discrimination in Employment Waiver Protection Act).

The Congressional Record includes a significant amount of debate on unsupervised ADEA waivers, all of which strongly opposes such waivers. Statements by the sponsors and cosponsors of the pending

bills make clear that the bills are not to change the law, but rather to clarify the long existing intent of the Congress that such waivers are against public policy, and

that the Congress intended such a result by incorporating FLSA procedures into the ADEA. Some of the more pertinent statements are recited in the margin.[4]

4. "[In contrast with Title VII claims], ADEA claims often arise from a group termination, layoff, or early retirement where the employer offers unilaterally to make a lump-sum payment. The affected employees have not filed a charge and are not involved in any dispute with their employer. Indeed, at the time the offer is made, the employees—who are unaware of who else is being terminated and who is going to replace the terminees—may be totally unaware of any potential ADEA claim. Because these employees have no reason to be on guard to protect their rights, an unsupervised waiver threatens to undermine their basic statutory protections.... This bill reaffirms Congress' earlier statutory requirement that the waiver of rights under the ADEA cannot occur without the supervision of the appropriate federal agency." 134 Cong.Rec. E 3425 (October 13, 1988) (statement of Rep. Hawkins).

"Employees who are offered such enhanced benefits typically have not filed a charge, are not involved in any dispute with their employer, and have no reason to be on guard to protect their rights. These employees deserve the full protection of the ADEA, and we are reaffirming here the judgment made by an earlier Congress that a waiver of their rights is inappropriate without the supervision of the Federal agency charged with protecting those rights, namely, the EEOC." 134 Cong.Rec. S 14509 (Oct. 4, 1988) (statement of Sen. Metzenbaum).

"The concerns I have about these regulations [the EEOC rule] are exemplified in the case of one of my constituents, Mr. Ronald Hallas, who testified before the Aging Committee last year. When Mr. Hallas' employer was cutting back its work force with an early retirement program, he was faced with a 'Hobson's choice': he could either sign a waiver and receive retirement benefits, or face permanent layoff without pension or health benefits. Strictly speaking, this waiver was 'knowing and voluntary'—it was written in plain English, and Mr. Hallas was given time to make his decision—however it was not without an element of coercion." 134 Cong.Rec. S 14509, 14512 (Oct. 4, 1988) (statement of Sen. Heinz).

"Although I and many others believe that the ADEA clearly invalidates any waiver of an older worker's rights unless supervised by the EEOC or a court, a number of recent court decisions have clouded this issue.... ... [S]ince older workers are typically in a profoundly unequal bargaining position with respect to their employer and many are not fully aware of their rights under the ADEA, [the knowing and voluntary standard of the EEOC rule is] meaningless." 134 Cong.Rec. S 14509, 14513 (Oct. 4, 1988) (statement of Sen. Melcher).

"When the [ADEA] was signed into law, Congress incorporated certain enforcement provisions of the [FLSA], including the requirement that a waiver of an employee's rights be supervised. Yet the EEOC has taken the opposite position—under a rule issued last summer, the EEOC gave notice that it will turn its back on the rights of older employees by recognizing as valid waivers that are not supervised by the Federal Government or a court. In so doing, it issued an open invitation to employers to use manipulative tactics to persuade employees to waive their rights without advice of attorney." 134 Cong.Rec. S 14509, 14513 (Oct. 4, 1988) (statement of Sen. Kennedy).

"It is my concern that older workers are in fact being forced into signing waivers under the fear that if they do not do so they will be terminated without adequate retirement benefits. An older employee confronted with possible termination, and knowing the difficulties of finding adequate employment at an older age, is in a desperate situation and is susceptible to even subtle forms of coercion. A hint dropped by the employer that the employee may soon be terminated, may be enough to get him to give up his legal rights in return for an early retirement package. Clearly, such a decision by an employee cannot be considered to be truly voluntary.... Congress has long looked with suspicion at waivers of rights to sue under the ADEA. Since the ADEA was enacted in 1967, it has been interpreted as incorporating the enforcement procedures of the [FLSA], ... which includes the requirement that waivers of rights have to be supervised by a federal agency or a court to be valid. The Congressional view of waivers was demonstrated by its reaction to regulatory activity in this area by the [EEOC]...." 135 Cong.Rec. E 1131 (April 10, 1989) (statement of Rep. Roybal).

"The EEOC's approach is wrong, both on legal grounds and as a matter of public policy. As I already mentioned, unsupervised waivers are prohibited under the FLSA, which Congress intended the ADEA to follow. On that basis alone, the EEOC's rule is improper. But the broader reason why unsupervised waivers should not be allowed under the ADEA can be seen by considering the context in which unsupervised waivers have been used.... [I]n increasing numbers, older workers are being asked to sign away their rights under the ADEA as part of an early retirement or exit incentive program.... This preemptive waiver of rights as a condition for receipt of benefits and before an employee may be aware of any pattern of discrimination is unfair and inconsistent with the intent of the ADEA. The employees have no reason to be on guard to protect their legal rights where no dispute has even arisen. Yet they are effectively coerced into signing away

■ The Court is aware of the general rule that legislative interpretations of existing law should be given little weight. *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2550–2551, 101 L.Ed.2d 490 (1988). But while the Congressional discussions are not controlling, they are not irrelevant, and at the very least are sufficient to substantially undermine any reliance on the EEOC regulation. Moreover, *Underwood*'s admonition was in response to a party's reliance on a House Committee Report as authority. Here, the Congress has voted on the issue three times, by expressly providing in each relevant appropriations bill that the EEOC regulation shall not be effective during that fiscal year and that no funds may be spent in furtherance of the policy expressed in the Rule. These votes were not only bipartisan, they were unanimous. 135 Cong.Rec. S 356, S 359 (Jan. 25, 1989) (statement of Sen. DeConcini).

### E.

Given the unique circumstances of the legislative activity on this issue, the Court finds that the Congressional debate, together with the passage by the Congress of yearly appropriations bills expressly rejecting the relevant EEOC rule, and the steady movement of legislation in both the House and the Senate to clarify the ADEA, persuasively indicate that unsupervised waivers of ADEA rights are contrary to the

intent of the Congress that passed the ADEA. The ADEA clearly incorporates the FLSA, *Lorillard,* 434 U.S. at 584–585, 98 S.Ct. at 872, and the preponderance of authority is that these waivers are void under the FLSA. The contrary view "ignores the logic of the principal decisions of the Supreme Court in favor of a reasoning that it imputes to a mere exemption lodged in a footnote." *Runyan,* 787 F.2d at 1045 (Engel, J. dissenting). Finally, the exemption that the contrary view is based upon has been rejected by this Circuit. *Lynn's Food Stores,* 679 F.2d at 1352–1355. Based upon all of the foregoing, the Court finds and rules that unsupervised waivers of ADEA claims are void and unenforceable. It follows that defendant's motion for summary judgment on this basis must be denied.

### III.

■ Defendant also contends that plaintiff Gormin's claim should be dismissed for failure to file a timely charge with the EEOC. (D–106). Plaintiff counters that his failure to file a timely charge should be excused in these circumstances as the filing period should be equitably tolled. Plaintiff also argues that defendant should be estopped from asserting untimeliness due to defendant's fraudulent and improper acts. Finally, plaintiff contends that a similarly situated plaintiff filed a timely

---

their statutory protections." 135 Cong.Rec. S 356 (Jan. 25, 1989) (statement of Sen. Metzenbaum).

"Immediate Congressional intervention is needed due to the recent inability of some federal courts to correctly follow a higher court ruling which held that Congress specifically incorporated enforcement procedures from the [FLSA] when it passed the ADEA in 1967. Instead of following the U.S. Supreme Court's holding in *Lorillard v. Pons* (1978), three federal circuit courts have ignored the Supreme Court's holding or errantly limited it.... *Lorillard* more correctly stands for the proposition that all FLSA enforcement procedures were incorporated by Congress into the ADEA, including the requirement that employment rights waivers must be supervised.... Moreover, these inferior courts have also used the EEOC's interpretation of prior case law and the EEOC proposed rule itself as precedent. In so doing, these courts relied on an EEOC that has been often

criticized for its controversial enforcement of the ADEA." 135 Cong.Rec. S 356, S 359 (Jan. 25, 1989) (statement of Sen. DeConcini).

"While I am proud to support this legislation, I am, to be honest, disturbed by the fact that we need to pass it. Despite the clear intent of the law, the [EEOC] has decided that if a person says they want to waive their rights under law, then there is no need to supervise the waiver, even though it may have been made under conditions conducive to coercion.... Mr. President, the purpose of this bill is to return the law to the status it enjoyed when the Congress passed the [ADEA]. This bill imposes no new burden on business nor does it reduce or expand the rights of individual employees. It simply reaffirms the rights and protections which were contained in the original law, and, once again, rebuffs the efforts of the EEOC to allow undue pressure to be placed on employees." 135 Cong.Rec. S 356, S 359 (Jan. 25, 1989) (statement of Sen. Kohl].

charge, and that this is sufficient. If any of plaintiff's contentions are correct then defendant's motion should be denied. Upon due consideration, the Court agrees that the filing of a class charge by a co-plaintiff Adams also satisfied the filing requirement for Gormin.

"[T]he purposes of section 626(d)'s notice requirement are fully served as to all similarly-situated individuals if one or more representative plaintiffs have filed a timely notice...." *Shuster v. Federated Dept. Stores*, 508 F.Supp. 118, 120 (N.D.Ga.1980) (quoting *Cavanaugh v. Texas Instruments, Inc.*, 440 F.Supp. 1124 (S.D.Tex. 1977)). Accord *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1019 (7th Cir. 1988) ("So long as similarly situated plaintiffs have filed timely charges that allege class-wide discrimination, the purposes for ADEA's charge filing requirement are satisfied"); *Kloos v. Carter–Day Co.*, 799 F.2d 397, 402 (8th Cir.1986) ("ADEA opt-in plaintiffs should not be required personally to file administrative charges...."). The effect of these holdings is that only one ADEA charge need be filed with the EEOC to satisfy the administrative requirements of 29 U.S.C. section 626(d). Even if it is necessary for the one charge to indicate that it represents a class wide complaint, see *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 755–756 (5th Cir.1980), that requirement has been met here. Adams' discrimination charge states: "The Company's reorganization affected older workers as a class more heavily than it did the younger workers." This gives sufficient notice to both the defendant and the EEOC that more than one individual's complaint may be at issue. Compare *Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 760 (9th Cir.1979) ("The Secretary and Crocker were put on notice that the discrimination charges encompassed a pattern of unlawful conduct transcending an isolated individual claim and that they should act accordingly.... Such notice gave the Department the opportunity to informally mediate and conciliate the dispute between Crocker and both named and unnamed complainants before litigation of the grievance commenced.") Accordingly, defendant's motion to dismiss for failure to file a timely charge also must be denied.

## IV.

 All that remain for consideration are three motions to strike. Defendant's motion to strike and for Rule 11 sanctions (D–125) is wholly without merit. Plaintiff's motion to strike reply memo (D–130) is moot, as the file does not contain the memo to which plaintiff's motion refers. Since the memo of which the plaintiff complains was filed without the necessary leave of the Court, the Clerk properly returned the memo rather than filing it. Plaintiff's motion to strike defendant's letter to the Court (D–140), may also be moot, in that the letter to which the motion is directed is also not in the file. This letter was sent directly to chambers. However, the Local Rules expressly forbid the use of correspondence in place of motions, and so it is appropriate to make clear that this letter will not be considered by the Court, even though it is not in the court file. Local Rule 3.01(f).

Based upon the foregoing, it is

ORDERED:

1. The EEOC's motion to intervene (D–84) is moot, and so DENIED.

2. Defendant's motion to dismiss (D–91) is moot, and so DENIED.

3. Plaintiffs' motion to amend complaint (D–101) is GRANTED, and the plaintiffs may file an amended complaint consistent with that sought by their motion within ten days of the date of this order. Either a consolidated complaint on behalf of all the former employee plaintiffs, or two separate complaints, retaining the current division among the employee plaintiffs, will comply with this order.

4. The EEOC's motion for leave to reply to defendant's opposition to intervention (D–105) is moot, and so DENIED.

5. Defendant's motion to dismiss and for summary judgment (D–106) is DENIED.

6. Defendant's request for oral argument on its motion to dismiss and for sum-

mary judgment (D–110) is moot, and so DENIED.

7. Defendant's motion for leave to reply to plaintiff's response to defendant's motion to dismiss and for summary judgment (D–111) is moot, and so DENIED.

8. Defendant's motion to strike and for Rule 11 sanctions (D–125) is DENIED.

9. Plaintiff's motion to strike reply memo (D–130) is moot, and so DENIED.

10. Plaintiff's motion to strike Defendant's letter to the Court (D–140) is GRANTED, and that letter will not be considered by the Court in any way.

DONE AND ORDERED.