**James DRUFFNER, Plaintiff and Appellant,**

v.

**MRS. FIELDS, INC., Defendant and Appellee.**

No. 910240–CA.

Court of Appeals of Utah.

March 25, 1992.

Jeffrey K. Woodbury, Olga A. Bruno and Reid W. Lambert (argued), Woodbury, Jensen, Kesler & Swinton, P.C., Salt Lake City, for plaintiff and appellant.

Randall N. Skanchy (argued) and Diane Abegglen, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for defendant and appellee.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

This appeal concerns an employee's ability to release his or her employer from liability for claims arising under the Fair Labor Standards Act (FLSA).[1] Plaintiff, James Druffner (Druffner), appeals an entry of summary judgment in favor of defendant, Mrs. Fields, Inc. (Fields). The district court dismissed Druffner's complaint with prejudice, finding that "where a bona fide dispute exists regarding wages and amounts due at the termination of employment, the policy of the law is to allow the parties to compromise and settle said dispute." We reverse.

## BACKGROUND

Druffner was employed by Fields as a general ledger accountant from March 30, 1987 to September 19, 1988. Shortly after leaving his employment with Fields, Druffner claimed that Fields owed him reimbursement for several unused vacation days which Druffner had earned during his employment. Fields disputed the claim. On or about December 29, 1988, Fields offered to pay Druffner $2,999.36 in settlement of the claim. Druffner accepted the offer. In consideration for the settlement amount, Druffner signed a waiver and release agreement (Release Agreement) which purported to release Fields

> from any and all claims arising out of [Druffner's] employment with [Fields] and the termination thereof, including but not limited to claims based on express or implied contract, covenants of good faith and fair dealing, wrongful discharge, the Fair Labor Standards Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and any other applicable federal, state or local laws, ordinances and regulations.

On September 24, 1990, pursuant to section 207(a)(1) of FLSA,[2] Druffner filed a complaint against Fields claiming entitlement to additional compensation for overtime hours worked. Fields sought summary judgment on the basis that Druffner's claim was barred by the Release Agreement of December 29, 1988. The district court agreed and entered summary judgment for Fields on February 13, 1991. This appeal followed.

## STANDARD OF REVIEW

In reviewing an entry of summary judgment, we view the facts in the light

---

1. 29 U.S.C. § 201 (Supp.1991).

2. Section 207(a)(1) reads in pertinent part:
   (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
   29 U.S.C. § 207(a)(1).

most favorable to the opposing party and affirm only where it appears no genuine dispute exists as to any material issue of fact, and where the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 999–1000 (Utah 1991); *New West Fed. Sav. & Loan Ass'n v. Guardian Title Co.*, 818 P.2d 585, 588 (Utah App.1991). Moreover, "determination of whether, given this view of the evidence, the moving party is entitled to a judgment is a question of law, which is reviewed for correctness." *Johnson*, 818 P.2d at 1000.

## ANALYSIS

### Purpose of the Fair Labor Standards Act

Congress enacted FLSA recognizing that, "due to the unequal bargaining power" between employees and employers, mandatory legislation was necessary to prevent private contracts between employees and employers which endanger national health and commercial efficiency. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). In particular, the legislative history of FLSA shows that Congress intended to protect employees from substandard wages and excessive work hours. *Id.* For this purpose, standards of minimum wages and maximum work hours were imposed. *O'Neil*, 324 U.S. at 707, 65 S.Ct. at 902.

The United States Supreme Court first addressed the validity of waivers under FLSA in *O'Neil*. In *O'Neil*, two employees [3] had signed waivers of FLSA rights in exchange for payment of stipulated sums due for unpaid overtime wages. When the employees later brought actions against their employers for liquidated damages and attorney fees pursuant to 29 U.S.C. § 216(b) [4], the employers argued that the employees' waivers barred their FLSA claims. The Supreme Court disagreed. The Court observed that, in each case, no bona fide dispute existed as to FLSA coverage or the amount due. *O'Neil*, 324 U.S. at 703, 713, 65 S.Ct. at 900, 905. The Court concluded that waivers of private rights guaranteed by FLSA were void as against the public policies FLSA was intended to further. *O'Neil*, 324 U.S. at 704, 714, 65 S.Ct. at 900–01, 905.

In arriving at its conclusions, the *O'Neil* Court noted the mandatory language of section 207(a)(1) of FLSA, requiring that an employer shall not employ a worker longer than the specified time without payment of overtime compensation. *O'Neil*, 324 U.S. at 707–08, 65 S.Ct. at 903. This mandatory language demonstrates that an employee may not waive his or her right to overtime compensation. "Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate." *O'Neil*, 324 U.S. at 704, 65 S.Ct. at 901.

Shortly after deciding *O'Neil*, the Supreme Court revisited the waiver issue in *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946). In *Gangi*, an employer disputed whether its employees were covered by FLSA, and therefore refused to pay the claimed overtime. When the employees threatened legal action, the employer paid the claimed overtime wages in exchange for waivers from the employees of "any other or further obligations in connection [with FLSA]." *Gangi*, 328 U.S. at 112, n. 5, 66 S.Ct. at 927, n. 5. The employees later filed suit to recover liquidated damages under section 216(b) of FLSA. In its defense, the employer pleaded affirmatively that the waivers were obtained in settlement of a bona fide dispute as to FLSA coverage. *Gangi*, 328 U.S. at 112, 66 S.Ct. at 927.

In determining that the waivers were invalid, the Court opined that "the remedy

---

**3.** *O'Neil* consolidated three cases, two of which are of particular interest to the instant appeal. As the third case involved an employee's right to interest on sums recovered pursuant to 29 U.S.C. § 216(b), it is inapplicable here.

**4.** 29 U.S.C. § 216(b) is set forth in note 5.

of liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage." *Gangi*, 328 U.S. at 114, 66 S.Ct. at 928. The Court further stated that "the purpose of [FLSA], which ... was to secure for the lowest paid segment of the nation's workers a subsistence wage, leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage." *Gangi*, 328 U.S. at 116, 66 S.Ct. at 929. To allow such waivers would thwart the public policy underlying FLSA. *Id.*

### Valid Waivers Under FLSA

Although waivers of FLSA rights are generally invalid, section 216 of FLSA allows an employee to waive his or her FLSA rights through two specific methods. *Lynn's Food Stores, Inc. v. United States,*

5. Section 216(b) states in pertinent part:

(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection.
29 U.S.C. § 216(b) (Supp.1991).

6. Section 216(c) states in pertinent part:

679 F.2d 1350, 1352–53, 1355 (11th Cir. 1982). First, section 216(b)[5] allows for a judicially approved stipulated judgment where the employee files suit directly against the employer. Second, section 216(c)[6] permits waiver when the Secretary of Labor supervises the payment in full[7] of a settlement reached between the employee and the employer. The waiver provision of section 216(c) was added to FLSA in 1949 as an incentive for employers to accept settlements supervised by the Department of Labor, and as a means of providing employers with certainty as to what constituted a valid and final waiver of FLSA claims. *See Sneed v. Sneed's Shipbuilding, Inc.,* 545 F.2d 537, 539 (5th Cir.1977).

The Eleventh Circuit addressed the waiver mechanisms of section 216 in *Lynn's Food Stores.* After an official investiga-

(c) The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages. The right provided by subsection (b) of this section to bring an action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation under sections 206 and 207 of this title or liquidated or other damages provided by this subsection owing to such employee by an employer liable under the provisions of subsection (b) of this section, unless such action is dismissed without prejudice on motion of the Secretary.
29 U.S.C. § 216(c) (Supp.1991).

7. In the context of section 216(c), "payment in full" relates to full payment of the settlement amount, not full payment of the underlying claim. *See Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 305 (7th Cir.1986).

tion, the Department of Labor determined that the employer, Lynn's Food Stores, had violated several FLSA provisions, and was liable to its employees for back wages and liquidated damages. *Lynn's Food Stores*, 679 F.2d at 1352. After failing to arrive at a settlement with the Department of Labor, the employer negotiated a settlement directly with fourteen employees. The employer offered the employees a total sum of $1,000.00 to be divided among them, in exchange for each employee's waiver of all claims arising under FLSA. The employer then sought judicial approval of the settlement. *Id.*

The court refused to grant approval of the settlement because the waiver agreements fell "into neither recognized category for settlement of FLSA claims." *Id.* at 1353. The court determined that the waiver agreements could not be approved because they were neither supervised by the Department of Labor, nor were they entered as a stipulated judgment in an action brought by the employees. *Id.* The court concluded that approval of "an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." *Id.* at 1354 (citing *Gangi*, 328 U.S. 108, 66 S.Ct. 925; *O'Neil*, 324 U.S. 697, 65 S.Ct. 895).

Like the waiver agreements in *Lynn's Food Stores*, the Release Agreement between Fields and Druffner fits neither of the two categories specified in section 216, and therefore, under the reasoning of that case and the majority view, fails to qualify as a valid waiver under FLSA.

### Waiver of Bona Fide Disputes

■ Fields contends, however, that the waiver is valid because, at the time Druffner signed the Release Agreement, a bona fide dispute existed as to his FLSA claims. For this proposition, Fields notes that *Gangi* was limited to a bona fide dispute as to coverage, and therefore left unanswered

the question of whether an employee may waive FLSA rights where a bona fide dispute exists as to an issue other than coverage. Fields relies on the Court's statement that it did not "consider here the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment." *Gangi*, 328 U.S. at 114–15, 66 S.Ct. at 928. Fields contends that employers and employees are not precluded from compromising and settling claims based on FLSA if a dispute exists as to an issue other than coverage.

Fields's argument is tenuous. Although the *Gangi* court stated in dicta that "other situations" might warrant private settlement, the Court expressly refused to examine the issue in those contexts. Fields cannot legitimately claim that by the Court's refusal to address the issue, the Court implicitly ruled that such "other situations" necessarily allow waivers. Such a claim was recently rejected in *Gormin v. Brown–Forman Corp.*, 744 F.Supp. 1100 (M.D.Fla.1990). In *Gormin*, the court rejected the view that the language in *Gangi* referring to "other situations" indicates that waivers are necessarily valid in other situations. Such a "construction is contrary to the long established rule that an employee's rights under the FLSA may not be waived by an unsupervised release." *Id.* at 1104 (citations omitted). The court concluded that "the preponderance of authority is that these waivers are void under the FLSA. The contrary view 'ignores the logic of the principal decisions of the Supreme Court in favor of a reasoning that it imputes to a mere exemption lodged in a footnote.'" [8] *Id.* at 1107 (citation omitted).

■ Nonetheless, even if we agreed with Fields's rationale, the Release Agreement is invalid because no bona fide dispute then existed as to Druffner's entitlement to overtime compensation. According to the Release Agreement itself, the only bona fide dispute at that time was a dispute over payment for earned, but unused, vacation days. The Release Agreement makes specific reference to disputed vacation pay,

---

**8.** Footnote 10 in *Gangi* referred to a federal district court opinion which stated, again in dicta, that a settlement of a bona fide dispute

about the number of hours worked *might* be valid. *Strand v. Garden Valley Tel. Co.*, 51 F.Supp. 898, 904–05 (D.Minn.1943).

but is silent as to the actual existence of any additional disputes. The express language referring to FLSA was merely part of a catchall waiver clause reciting a number of possible, but as of then apparently unasserted, claims. Hence, we conclude from the face of the Release Agreement that, at the time the waiver was signed, no dispute existed regarding overtime compensation. Fields's motion for summary judgment was submitted on the basis of the pleadings and the Release Agreement only.

██ Additionally, Fields argues that public policy encourages employers and employees to privately resolve conflicts between them when their employment relationships terminate. Fields asserts that FLSA waivers should be treated as simple contracts, and enforced or rescinded on the same grounds as other contracts. This argument is without merit.

Admittedly, parties are generally allowed to voluntarily enter into binding contracts. However, "contracts tending to encourage violation of laws are void as contrary to public policy." *O'Neil*, 324 U.S. at 710, 65 S.Ct. at 903. "To permit an employer to secure a release from the worker ... will tend to nullify the deterrent effect which Congress plainly intended that [FLSA] should have. Knowledge on the part of the employer that he cannot escape liability ... by taking advantage of the needs of his employees tends to insure compliance in the first place." *O'Neil*, 324 U.S. at 709–10, 65 S.Ct. at 903.

## CONCLUSION

██ In sum, waivers of FLSA rights which are neither administratively supervised nor judicially approved are not enforceable to bar a cause of action for unpaid overtime compensation. Such waivers are against public policy and are unenforceable as a matter of law.

Accordingly, entry of summary judgment in favor of Fields is reversed.

BENCH and ORME, JJ., concur.